UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAMALUHIAOKEI FINNEGAN,

        Plaintiff,

v.                                                               Case No: 6:18-cv-289-Orl-31TBS

JOSE ARMAS, BRUCE TEAL and
AMY VITANI,

        Defendants.
_____/

## ORDER

This case is before the Court on Defendants Jose Armas,' Bruce Teal's, and Amy Vitani's Motion to Dismiss Amended Civil Rights Complaint (Doc. 20). Plaintiff filed a Response in Opposition to the Motion to Dismiss ("Response to Motion to Dismiss," Doc. 29). For the following reasons, Defendants' Motion to Dismiss Amended Civil Rights Complaint (Doc. 20) is granted.

    **I.**     **FACTUAL BACKGROUND**[1]

Plaintiff, who was a pretrial detainee when he initiated this action, is suing Defendants Jose Armas, Bruce Teal, and Amy Vitani for denial of medical care, violation of his First Amendment rights, retaliation, and violation of Section 839.13(2)(a) of the

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint (Doc. 8), the allegations of which this Court must take as true in ruling on a motion to dismiss. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

Florida Statutes for falsification of records.[2] (Doc. 8 at 3-4.) Defendants are employees of Armor Medical ("Armor"), a private company contracted by Brevard County, Florida to provide medical and mental health care to inmates at the Brevard County Jail ("Jail"). (*Id.* at 3, 12.) Defendant Vitani, sued in her individual and official capacities, serves as the Health Service Administrator in charge of Armor at the Jail, trains and disciplines the medical staff, and is the final decisionmaker on inmate grievances. (*Id.* at 12.) Defendant Armas, the President of Armor, and Defendant Teal, the Chief Executive Officer of Armor, are sued in their official capacities. (*Id.* at 2, 12.) According to Plaintiff, Defendant Armas and Teal are responsible for setting policies for Armor. (Doc. 8 at 20.) Plaintiff further contends that they are responsible for the supervision and discipline of Armor's employees and are responsible for his injuries because they failed to put policies in effect to be followed or to supervise their employees. (*Id.*)

Plaintiff has a daily prescription for Effexor XR (Venflexine) to be taken in the morning, Risperadol to be taken in the evening, and Gabupentin to be taken in the morning and evening to treat his psychiatric condition and complex partial temporal lobe seizure disorder. (Doc. Nos. 8 at 13; 8-3 at 1.) On July 26, 2016, Plaintiff filed a medical grievance complaining that his medications were being given to him at the wrong time of day, and the issue was unresolved for several weeks. (*Id.*)

On August 13, 2016, a psychiatrist wrote Plaintiff's prescription incorrectly,

---

[2] Plaintiff was convicted and is now in the custody of the Florida Department of Corrections. Because Plaintiff is no longer incarcerated at the Brevard County Jail, the Court has no authority to grant any declaratory or injunctive relief against Defendants.

reducing his prescription to half the previously prescribed dosage, which caused Plaintiff to suffer *inter alia* depression and withdrawal symptoms. (*Id*.) Plaintiff complained about the matter, and it took approximately a week to correct Plaintiff's prescription. (*Id*.) Plaintiff discovered on August 23, 2016, that the pharmacy had given him the wrong medication.[3] (*Id*.) Plaintiff filed a grievance to which Defendant Vitani responded, "Thanks for letting me know." (*Id*. at 14) The issue was resolved several days later. (*Id*.)

On November 23, 2016, Plaintiff was not given his evening medication because he was attending a Bible study, but the nurse marked in his record that he refused to take his medication. (*Id*.) When Plaintiff learned he had missed his medications, he told Officer Dominguez that the medications are "must haves," which requires Plaintiff to sign a written refusal form if he does not take them. (*Id*.) Officer Domiguez called the nurse, who lied and said the medications were not "must haves" and refused to bring them to Plaintiff. (*Id*.) Plaintiff filed a grievance, and Defendant Vitani responded, "Thanks for letting me know." (*Id*.) As a result of missing his medications, Plaintiff suffered stomach pain, was unable to eat the following day, and suffered mood swings for approximately three days. (*Id*.)

On January 6, 2017, Plaintiff did not receive his morning dose of Gabupentin for seizures because it was not on the medicine cart, and the nurse refused to bring it to Plaintiff. (*Id*.) Plaintiff filed a grievance explaining that he can suffer severe withdrawal symptoms when he does not receive his medication, complaining that the nurse's

---

[3] Plaintiff does not state which medication was incorrect.

3

response was a continuing problem for inmates, and requesting to know if Armor had a policy requiring a nurse to return with a "must have" medication if it was not on the cart. (*Id.* at 15.) Defendant Vitani again responded, "Thanks for letting me know." (*Id.*) Plaintiff responded to Defendant Vitani's response by filing another grievance on January 12, 2017, wherein he asked about Armor's policy on "must have" medications. (*Id.*) Defendant Vitani advised Plaintiff that if his medications were available, he would receive them. (*Id.*)

On January 18, 2017, Plaintiff did not receive his evening medications because he was at Bible study. (*Id.* at 15.) Medical personnel refused to bring Plaintiff his medications when he requested them. (*Id.*) Plaintiff filed a grievance to which Defendant Vitani responded that if Plaintiff's medications were available, he would receive them. (*Id.* at 15-16.) Plaintiff responded to Defendant Vitani by informing her that his medications were available, but he did not receive them, and further complaining that either the nurse was not following policy or he was being discriminated against for attending religious services or filing grievances. (*Id.* at 16.) Defendant Vitani responded, "Thanks for bringing this to my attention." (*Id.*)

Plaintiff did not receive his morning medications on March 24, 2017, causing him to suffer physical withdrawal and seizures. (*Id.*) Plaintiff filed a grievance, and Defendant Vitani responded, "Thanks for bringing this to my attention." (*Id.*)

On August 15, 2017, Plaintiff's Gabupentin was not on the medical cart, and the nurse refused to get it for him. (*Id.*) Plaintiff filed a grievance complaining that he was

4

being denied his civil rights by being denied his prescribed medication. (*Id.*) Defendant Vitani responded, "It appears you missed one dose. The meds have been delivered from the pharmacy." (*Id.*) Plaintiff appealed the answer, noting that it was an ongoing problem, but the appeal was not answered. (*Id.* at 17.) On August 16, 2017, Plaintiff's morning medications were not on the cart. (*Id.*) A nurse, however, gave Plaintiff all his medication except the Venflexine, which the nurse refused to return to medical to obtain. (*Id.*) Plaintiff filed a grievance reiterating the effects of missing his medications. (*Id.*) Defendant Vitani responded, "Thanks for letting me know. I will look into this." (*Id.*) Plaintiff suffered physical pain and other symptoms from missing his Venflexine. (*Id.*)

On November 10, 2017, a nurse refused to provide Plaintiff with his Venflexine although it was on the cart. (*Id.* at 17-18.) The nurse also failed to request a refill for one of Plaintiff's medications despite knowing that only one pill remained. (*Id.* at 18.) That evening, Plaintiff did not receive his Risperadol because a refill had not been requested. (*Id.*) Plaintiff filed two grievances to which Defendant Vitani responded respectively, "Thanks for letting me know. I will look into this[,]" and "It appears your refill came in." (*Id.*) Plaintiff suffered multiple conditions from missing his morning and evening medications, including *inter alia* seizures and physical withdrawals. (*Id.*) On November 16, 2017, Plaintiff received only half of his morning dose of Venflexine because there was insufficient medication on the cart and the nurse refused to return to medical to obtain more of the medication. (*Id.*) Plaintiff filed a grievance to which Defendant Vitani responded, "Thanks for letting me know." (*Id.*)

5

On January 1, 2018, Plaintiff did not receive his Venflexine in the morning because the prescription had run out the day before and the nurse had not requested a refill. (*Id.* at 19.) Plaintiff's criminal defense attorney had contacted Armor to determine why Plaintiff had not received his medications and was told that Plaintiff's records indicated he had refused his medications, which was false. (*Id.*) Plaintiff filed a grievance regarding the incident. (*Id.*)

On May 3, 2018, Plaintiff gave his service forms to a Jail deputy to be mailed to this Court. (Doc. 8-3 at 1.) Later that day, he was taken to medical to see a psychiatrist, contrary to standard procedure. (*Id.*) The psychiatrist continued Plaintiff's prescription of Gabupentin twice daily, Risperadol in the evening, and Venflexine in the morning. (*Id.*) When the nurse delivered Plaintiff's medications that evening, the nurse told Plaintiff that he had been taken off all medications except Gabupentin once daily. (*Id.*) Plaintiff filed a grievance to which Defendant Vitani responded that Plaintiff would still get his morning medications but was accidentally taken off Risperadol, which would be fixed as soon as possible. (*Id.*) According to Plaintiff, Risperadol is supposed to be stopped gradually and is never supposed to be stopped abruptly. (*Id.*) Plaintiff did not receive Risperadol from May 3, 2018, through May 9, 2018, resulting in him suffering panic attacks, paranoia, and other symptoms. (*Id.*)

## II.     STANDARD FOR MOTION TO DISMISS

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, courts must accept all

factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In the case of a *pro se* action, courts should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III. ANALYSIS

#### A. Deliberate Indifference to Serious Medical Need

Defendants contend that Plaintiff has failed to establish a constitutional violation for deliberate indifference to a serious medical need. To establish liability under § 1983 for denial of adequate medical care, a plaintiff must show that the failure to provide him with medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution.[4] A plaintiff must demonstrate that his inadequate care arose from a deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A prisoner must show (1) an objectively serious medical need existed, and (2) the defendants acted with deliberate indifference to that

---

[4] Because Plaintiff was a pre-trial detainee when his alleged lack of medical care occurred, his claim must be analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

7

need. *Jacoby v. Baldwin Cty.*, 596 F. App'x 757, 763–64 (11th Cir. 2014). A serious medical need is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). To establish deliberate indifference, a prisoner must prove that a defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Burnette*, 533 F.3d at 1330 (quotation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834-835 (1994).

"'[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

> [T]o hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Id.*
>
> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.
>
> *Id.* (internal quotation marks omitted) (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued

8

> duration, rather than isolated occurrences." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation mark omitted). In short, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone,* 326 F.3d at 1360 (alteration in original) (internal quotation marks omitted).

*Id.* at 1047-48.

Moreover, a suit against an individual in his official capacity is the same as a suit against the municipality. *See Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005) (citing *McMillian v. Monroe County*, 520 U.S. 781, 785 n. 2 (1997)). "When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Id.* at 1221 (footnote omitted) (citing *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986)).

Plaintiff has not alleged any facts demonstrating that the purported constitutional violation resulted from an official policy or custom. Consequently, Plaintiff has failed to state a claim against Defendants in their official capacities.

Additionally, assuming Plaintiff has demonstrated he suffers from an objectively serious medical need, he has not demonstrated that Defendant Vitani acted with deliberate indifference to his serious medical need. Per Plaintiff's allegations, Defendant Vitani did not fail to provide Plaintiff with his medications. Consequently, Plaintiff must demonstrate a causal connection between Defendant Vitani's actions and Plaintiff's failure to receive his medication.

Plaintiff has not alleged facts showing a history of widespread abuse to put

9

Defendant Vitani on notice of the medical staff's failure to give Plaintiff his medication. Rather Plaintiff's allegations spanning more than a year demonstrate that the medical staff's failure to give Plaintiff portions of his medication were isolated occurrences.

Plaintiff did not receive some of his medications on a total of seventeen days of the approximate 653 days (July 26, 2016, through May 9, 2018) he was in the Jail. In other words, Plaintiff received his medication approximately 97 percent of the time he was at the Jail. *See Williams v. Arnold*, 207 F. App'x 980, 984–85 (11th Cir. 2006) (concluding the plaintiff failed to show deliberate indifference based on failure to receive medication where he received his medications 92 percent of the time while in custody); *cf. Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 902-04 (11th Cir. 2012) (concluding the plaintiff established deliberate indifference where he failed to receive several medications, one for a month, another for twenty-two days, and another for more than a month, requiring him to be taken to the hospital on multiple occasions). The dates on which Plaintiff did not receive a portion of his medications occurred sporadically, separated in most instances by weeks or months. The longest period Plaintiff went without receiving one of his medications, Risperadol, was a seven-day period from May 3, 2018, through May 9, 2018. Although Plaintiff alleges he suffered sleeplessness, panic attacks, anxiety, and flu like symptoms as a result, there is no indication or any allegation that he suffered any lasting physical harm from the delay in receiving the medication. Furthermore, Plaintiff only failed to receive all his medication on a single day.

There is no indication that Defendant Vitani ordered, condoned, or willfully

ignored the delays in Plaintiff receiving his medication. Moreover, Plaintiff has not shown that Defendant Vitani had a custom or policy prohibiting the distribution of medication to individuals who were absent from their cells during the allotted time for medication distribution or prohibiting refills of prescriptions. Plaintiff also does not allege facts that support an inference that Defendant Vitani directed her subordinates to act unlawfully or knew that they would act unlawfully and failed to prevent them from doing so. In sum, Plaintiff's allegations do not show that Defendant Vitani directly participated in any unconstitutional conduct or that a causal connection exists between her actions and the alleged constitutional violation or that she acted with anything more than negligence. Consequently, Plaintiff has not stated a claim against Defendant Vitani in her individual capacity for deliberate indifference to a serious medical need.

B.   **First Amendment Violation**

Plaintiff complains that Defendants violated his First Amendment right to free exercise of religion. To establish a violation of the right to free exercise of religion, the plaintiff must "establish that a state actor imposed a 'substantial burden' on his practice of religion." *Wilkinson v. GEO Grp., Inc.*, 617 F. App'x 915, 917 (11th Cir. 2015) (quoting *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1549 (11th Cir. 1993)). "[A] substantial burden occurs if the conduct complained of 'completely prevents the individual from engaging in religiously mandated activity, or . . . requires participation in an activity prohibited by religion' and, at a minimum, must have 'something more than an incidental effect on religious exercise.'" *Hoever v. Belleis*, 703 F.

11

App'x 908, 912 (11th Cir. 2017) (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).

Plaintiff has not alleged that Defendants Teal, Armas, or Vitani imposed any burden on his practice of religion. There is no indication that Defendants had a policy or custom to deny medication to individuals who were at Bible study when medications were dispensed. Furthermore, Plaintiff does not allege that attending Bible study is a religiously mandated activity. Consequently, Plaintiff has not shown that the nurses' failure to return to give him his medication after his Bible study completely prevented Plaintiff from engaging in religiously mandated activity. Finally, from Plaintiff's allegations, there were only two times that he did not receive some of his medication because he was at Bible study. Accordingly, Plaintiff has failed to state a claim for violation of the First Amendment right to free exercise of religion.

### C. Falsification of Records

Plaintiff contends that Defendants violated Section 839.13(2)(a) of the Florida Statutes by falsifying his records to indicate he had refused his medications. Section 893.13(2)(a) criminalizes the falsification of an official record relating to an individual in the custody of a state agency. Fla. Stat. § 893.13(2)(a).

"[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v. U.S. Atty. Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Consequently, the Court lacks "authority to order an investigation to the criminal acts alleged in the complaint, since that responsibility is entrusted to the executive branch of

12

the government and not the judiciary." *Logan v. Hall*, 604 F. App'x 838, 841 (11th Cir. 2015). Furthermore, there is no allegation that Defendants falsified Plaintiff's medical records, ordered them to be falsified, or condoned such action or had a policy or custom to do so. Accordingly, Plaintiff has failed to state a claim on which relief may be granted for falsification of records.

**D.     Retaliation**

Plaintiff asserts that Defendants retaliated against him by failing to give him his Risperadol from May 3, 2018 through May 9, 2018. (Doc. 8-3 at 1.) In support of this ground, Plaintiff notes that he gave a deputy at the Jail his service forms on May 3, 2018. (*Id*.) Defendants do not address this claim. Pursuant to 28 U.S.C. § 1915(e), however, the Court is required to dismiss a case at any time if it is determined that the action fails to state a claim on which relief may be granted. Consequently, the Court will consider whether Plaintiff has stated a claim for retaliation.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a retaliation claim, a prisoner must demonstrate that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

13

Plaintiff has not alleged facts demonstrating that Defendants ordered or took any adverse action against him. Moreover, Plaintiff instituted this action on January 7, 2018, by mailing a civil rights complaint from the Jail. There is no allegation that Defendants were aware that Plaintiff gave service forms to a deputy on May 3, 2018. Furthermore, Defendants were not served until May 30, 2018, after the alleged retaliation. *See* Doc. Nos. 14-17. Plaintiff, therefore, has not demonstrated a causal relationship between the retaliatory action and the filing of his service forms. Therefore, Plaintiff has not stated a claim for retaliation against Defendants.

In accordance with the foregoing, it is hereby **ORDERED** as follows:

1. Defendants Jose Armas,' Bruce Teal's, and Amy Vitani's Motion to Dismiss Amended Civil Rights Complaint (Doc. 20) is **GRANTED**.

2. Plaintiff will be provided a final opportunity to state a claim on which relief may be granted by filing an amended complaint. Within **TWENTY-ONE (21) DAYS** from the date of this Order, Plaintiff may file a Second Amended Complaint. Failure to do so within this time will result in the dismissal of this action without further notice.

3. The Clerk of Court is directed to mail Plaintiff a civil rights complaint form with this Order.

**DONE** and **ORDERED** in Orlando, Florida on March 21, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party
OrlP-1 3/21